442 So.2d 206 (1983)
AMERICAN FIRE & INDEMNITY CO., Petitioner,
v.
Ruth SPAULDING, Respondent.
No. 62267.
Supreme Court of Florida.
December 8, 1983.
*207 Keith H. Park of Albury, Park & Heuer, and Edna L. Caruso, West Palm Beach, for petitioner.
Majorie Gadarian Graham, of Jones & Foster, West Palm Beach, for respondent.
James C. Blecke of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for Florida Defense Lawyers Ass'n, amicus curiae.
McDONALD, Justice.
We have for review Spaulding v. American Fire & Indemnity Co., 412 So.2d 367 (Fla. 4th DCA 1981), because of conflict with Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla. 1982).[1] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution and quash the instant district court opinion.
On December 1, 1978 Spaulding's minor son, Joseph Spaulding, was injured while a passenger in a vehicle operated by Bradford Suder when it collided with a vehicle operated by Robert V. Troyan and insured by Kenilworth Insurance Company. The Suder vehicle was owned by Bradford's father, Burton Suder, and insured by American Fire & Indemnity Company (AFIC). Spaulding was insured by Fidelity & Casualty Company of New York (F & C).
The AFIC policy issued to Burton Suder provided bodily injury liability coverage of $250,000 per person and $500,000 per occurrence and uninsured motorist coverage of $15,000 per person and $30,000 per occurrence. Spaulding's F & C policy provided uninsured motorist coverage of $10,000 per person and $20,000 per occurrence. Kenilworth's coverage of Troyan was $10,000 per person, and it offered its policy limits to Spaulding to settle her claim on behalf of her son. AFIC failed to timely approve the settlement. Spaulding, therefore, pursuant to subsection 627.727(6), Florida Statutes (1977), instituted an action for damages against Troyan and Kenilworth, for uninsured motorist benefits against AFIC and F & C, and for attorneys' fees from AFIC.
AFIC counterclaimed for declaratory relief to determine the amount of uninsured motorist coverage available to Spaulding, who filed a general denial and sought attorneys' fees. The trial court granted AFIC's motion to strike Spaulding's claims for attorneys' fees in her complaint and in her answer to the counterclaim. The court also granted AFIC's motion to sever the counterclaim. The parties proceeded to nonjury trial on the issue of whether AFIC's uninsured motorist coverage was $15,000 or $250,000.
The evidence before the trial court established that on November 3, 1977 Suder authorized his insurance agent to increase his bodily injury insurance per person from $100,000 to $250,000. At this time he was informed that, pursuant to subsection 627.727(2), Florida Statutes (1977), uninsured motorist coverage of $250,000 was available to him.[2] He elected, however, to maintain *208 his uninsured motorist coverage at $15,000 per person. No written rejection was obtained. Suder's express refusal to increase his uninsured motorist coverage was followed by at least two policy changes made prior to the accident: one added Suder's son Bradford and the other added a vehicle to the policy. On these occasions Suder was not again advised that he had the opportunity to increase his uninsured motorist coverage. Suder testified, however, that he intended for his uninsured motorist coverage to remain at the lower limits because of the additional expense of increased coverage.
Based upon the evidence adduced at trial, the trial court found that the uninsured motorist coverage was $15,000 per person. On appeal the district court reversed the trial court's decision and found the uninsured motorist coverage to be $250,000. The district court initially affirmed the striking of the plaintiff's claims for attorneys' fees, but on rehearing the court reversed its position and held that Spaulding was entitled to attorneys' fees at the trial level.
In holding that the correct amount of uninsured motorist coverage was $250,000, the district court construed subsection 627.727(1), Florida Statutes (1977), as requiring that the insurer inform the insured, Burton Suder, of his statutory right to higher uninsured motorist coverage with every "material" policy endorsement.[3] The fourth district advanced the view that any "material" policy change constitutes the issuance of a separate contract of insurance as opposed to a "renewal" and, therefore, the insurer is required to provide the insured with an opportunity to reject or select uninsured motorist coverage.[4] Since AFIC did not expressly offer increased uninsured motorist coverage when Suder's policy was altered to accommodate an additional driver and vehicle, the district court found that the uninsured motorist coverage automatically increased to $250,000, an amount equal to the general liability coverage.
We cannot agree with the district court's interpretation of the statute. While the statute clearly provides that uninsured motorist coverage is by operation of law equal to general liability coverage unless the named insured selects otherwise, it does not mandate that this selection be in writing or any other specific form. "What the statute does require is that a rejection of uninsured motorist coverage or a selection of lower limits of coverage must be knowingly made." Kimbrell v. Great American Insurance Co., 420 So.2d 1086, 1088 (Fla. 1982). In Kimbrell we noted that the question of whether the insured *209 made a knowing selection of coverage limits was an issue to be decided by the trier of fact. In making this factual determination the trier of fact should undoubtedly consider whether the insurer expressly informed the insured of his statutory right to higher uninsured motorist coverage. But while the existence or absence of an express offer is relevant to the factual inquiry, it "is not dispositive of the question of whether there was a knowing selection of coverage limits. It is conceivable that the insured might know of the availability of coverage without being expressly informed of such by the insurer." Id.
Less than one year before the policy alterations in question, Burton Suder affirmatively rejected his insurer's offer of increased uninsured motorist coverage. More importantly, Suder testified at trial that he intended for his uninsured motorist coverage to remain at $15,000 because of the additional expense of higher coverage. Clearly, despite the absence of an express offer at the time of the policy changes, Suder was aware of his statutory right to higher uninsured motorist coverage and knowingly elected to continue his selection of the lower amount. Thus, the statutory requirement of a knowing selection has been met.
The decision of Burton Suder, the named insured, to maintain his uninsured motorist coverage at $15,000 is binding on any additional insureds. Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 504 (Fla. 1982). We therefore conclude that the trial court correctly found the amount of uninsured motorist coverage available to Spaulding to be $15,000, and we quash the district court's opinion.
With regard to the attorneys' fees issue, section 627.428 requires that an insured must prevail against the insurer in order to be entitled to attorneys' fees. Spaulding, therefore, is denied attorneys' fees.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] It should be noted that our decision in Kimbrell had not yet been handed down at the time of the fourth district's opinion in Spaulding.
[2] § 627.727(2) states:

(2) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the company's rating plan as may be selected by the named insured .. .
[3] When the instant cause of action arose, § 627.727(1) provided in relevant part:

(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage... . Unless the named insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage in writing, the coverage need not be provided in or supplemental to a renewal policy when the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.
[4] We note that the legislature amended § 627.727(1) in ch. 82-386, §§ 66, Laws of Fla. (1982), thereby eliminating any possibility that this section will again be interpreted as requiring an offer of uninsured motorist coverage with every "material" policy change. § 627.727(1) (Supp. 1982) now reads in pertinent part:

[T]he [uninsured motorist] coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy issued to him by the same insurer, when the named insured or lessee had rejected the coverage in connection with a policy previously issued to him by the same insurer.
Our decision in the instant case, however, is based solely on our interpretation of the 1977 statute.