**William DIFFIN, Individually, and Betty Diffin, his wife, Plaintiffs-Appellees,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Caryl Anthony Vaughn Gibbs, et al., Defendants-Appellants.**

No. 83–3748.

United States Court of Appeals, Eleventh Circuit.

Feb. 22, 1985.

Frank E. Strelec, Claire L. Hamner, Sarasota, Fla., for defendants-appellants.

Charles P. Schropp, Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for Gibbs, et al.

Steven C. Ruth, Larry D. Beltz, St. Petersburg, Fla., for plaintiffs-appellees.

Before HILL, KRAVITCH and SMITH *, Circuit Judges.

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

JAMES C. HILL, Circuit Judge:

Appellees William and Betty Diffin brought this diversity action in the United States District Court for the Middle District of Florida, seeking a determination of the amount of uninsured motorist coverage available to William Diffin under automobile liability insurance policies issued by appellants, National Union Fire Insurance Company of Pittsburgh ("National Union") and Lloyds Underwriters Companies ("Lloyds").[1] Appellees claimed that they were entitled to benefits of up to $1,000,-000 on the National Union policy, and $15,-000,000, in excess of whatever they might receive from National Union, on the Lloyds policy. The jury returned a verdict in favor of the appellees, and appellants appeal that verdict, attacking the jury instructions and various rulings made by the trial court. We reverse the judgment and remand the case for entry of a judgment in favor of appellants.

## I. FACTS

National Union issued an automobile liability insurance policy to Aegis Corporation ("Aegis") and its wholly owned subsidiary Wellcraft Marine Corporation ("Wellcraft"), the named insureds. Lloyds issued to Aegis an automobile liability policy that covered liability in excess of that covered by the National Union policy. William Diffin was an employee of Wellcraft, and as such was insured under the National and Lloyds policies. While working as a truck driver for Wellcraft, Mr. Diffin was injured. The Diffins believed that the insurance benefits available to them under the insurance policies of the tortfeasors in the accident were insufficient to compensate them for their injuries, and sought to recover uninsured motorist coverage under the policies National Union and Lloyds sold Aegis.

At trial, appellees based their claim to coverage up to $1,000,000 on the National Union policy and $15,000,000 on the Lloyds policy on Florida Statute section 627.727, which, according to the Florida courts, requires all Florida automobile liability policies to provide uninsured motorist coverage in the amount of bodily injury liability coverage unless there has been a knowing, informed rejection of such coverage or a knowing, informed selection of lower limits of coverage by the named insured. *American Fire & Indemnity Co. v. Spaulding*, 442 So.2d 206, 208 (Fla.1983); *Kimbrell v. Great American Insurance Co.*, 420 So.2d 1086, 1088 (Fla.1982). Appellees maintained that Aegis, the named insured, had not made such a rejection or selection, and, thus, that they were entitled to coverage in the amount of bodily injury liability coverage, which was $1,000,000 in the case of the National Union policy, and $15,000,000 in the case of the Lloyds policy. National Union claimed that Aegis had knowingly selected lower uninsured motorist coverage limits of $100,000, and Lloyds maintained that Aegis had knowingly rejected uninsured motorist coverage entirely under its policy.

The sole issues presented to the jury were whether Aegis had knowingly rejected uninsured motorist coverage under the Lloyds policy and knowingly selected lower uninsured motorist coverage limits under the National Union policy. The evidence indicated that neither insurance company had expressly informed Aegis of the uninsured motorist coverage options, nor had they expressly offered Aegis such coverage. However, the evidence also indicated that Mr. Alden Tibbetts, the Aegis vice-president responsible for selecting and placing Aegis' insurance policies, had been employed as an insurance agent in Florida for approximately twenty years prior to undertaking his employment with Aegis, and was aware that Aegis was entitled to

1. We use "Lloyds" to refer collectively to Caryl Anthony Vaughn Gibbs, who was named as a defendant in his capacity as representative underwriter, and the following entities, which also were named as defendants: Orion Insurance Company, Ltd.; Indemnity Marine Insurance Company, Ltd.; English and Marine Insurance Company, Ltd.; and Northern Maritime Insurance Company, Ltd.

purchase uninsured motorist coverage up to the bodily injury liability limits of the policies. Mr. Tibbetts testified that he intended to select lower limits of $100,000 under the National Union policy and to reject such coverage entirely under the Lloyds policy.

## II. DISCUSSION

On appeal, appellants claim the judgment against them should be reversed for four reasons: (1) the trial court erroneously instructed the jury that they had a duty to inform Aegis, the insured, of the uninsured motorist coverage options; (2) the trial court abused its discretion in denying their motions for a directed verdict and for judgment notwithstanding the verdict; (3) the trial court erroneously instructed the jury that Lloyds had the burden of proving that the insured knowingly rejected uninsured motorist coverage; and (4) the trial court erroneously excluded evidence concerning the amount of workmen's compensation benefits paid to appellee William Diffin.

A. *The "Duty to Inform" Instruction.*

■ The trial judge instructed the jury that Lloyds and National Union "had a duty to inform Aegis Corporation of its uninsured motorist coverage options so as to enable Aegis Corporation to make an informed decision regarding the amount of uninsured motorist coverage, if any, it desired." Record at 708, 711. We find that there is no such duty under Florida law and, thus, that this instruction was erroneous.

Two recent Florida Supreme Court decisions make it clear that the requirement under Florida law of a knowing and informed rejection or selection does not translate into an absolute duty on the part of the insurer to inform the insured of the uninsured motorist options. In *American Fire & Indemnity Co. v. Spaulding,* 442 So.2d at 209, and *Kimbrell v. Great American Insurance Co.,* 420 So.2d at 1088, the court recognized that "the insured might

know of the availability of coverage without being expressly informed of such by the insurer," and thus that the failure of the insurer to so inform the insured, though relevant, "is not dispositive of the question of whether there was a knowing selection [or rejection]."

Appellees admit that statements made by the court in *Spaulding* and *Kimbrell* suggest that there is no duty to inform. But they maintain that such statements are dicta because the insurers in both cases had expressly informed the insureds of the uninsured motorist options at the time the policies were initially taken out. Appellees point out that the insurers had simply failed to reinform the insureds of the options later when the insureds made material changes to the policies,[2] even though, under Florida law, the making of such changes gave the insureds another opportunity to elect uninsured motorist coverage equal to the amount of bodily injury liability coverage. Appellees thus claim that *Spaulding* and *Kimbrell* held only that where an insurer has informed the insured of the uninsured motorist options at the time the policy is initially purchased, it does not have a duty to *reinform* the insured of the options when the insured later makes a material change in the policy.

Regardless of whether the more general statements in *Kimbrell* and *Spaulding* are dicta, we believe them to indicate that, in the opinion of the Florida Supreme Court, not only is there no duty to reinform, there is also no absolute duty to inform in the first instance. Our conclusion is supported by the reasoning employed in those decisions, as well as by the court's language. In deciding *Kimbrell* and *Spaulding,* the Florida Supreme Court did not focus on the fact that the insureds at one time had been informed of the uninsured motorist options, but rather on the fact that at the time the insureds made the material changes to the policies they were well aware of their unin-

---

**2.** In *Kimbrell,* an additional insured was added to the policy. In *Spaulding,* a party and a vehicle were added.

sured motorist options. Indeed, the court made it very clear that the controlling consideration is whether the insured is aware of his statutory rights, not how that knowledge was acquired. In *Spaulding*, 442 So.2d at 209, for example, the court stated,

> [c]learly, despite the absence of an express offer at the time of the policy changes, Suder was aware of his statutory right to higher uninsured motorist coverage and knowingly elected to continue his selection of the lower amount. Thus, the statutory requirement of a knowing selection has been met.

We also note that appellees are unable to cite a single Florida Supreme Court decision that in any way suggests that even though the insured is sophisticated and fully aware of the uninsured motorist options, he cannot have made an informed rejection or selection unless he was expressly informed of those options by his insurer.[3] In the absence of such authority, the alleged dicta of the Florida Supreme Court, found in the only two cases in which that court appears to have touched on the matter, are very persuasive indeed.

■ In addition to finding that the "duty to inform" instruction was erroneous, we determine, upon reviewing the entire jury charge, that the error was harmful and warrants reversal. *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979). The judge essentially instructed the jury that Aegis could not have made a knowing rejection or selection unless the appellants had expressly informed Aegis of the uninsured motorist options.[4] Since the evidence indicated that neither appellant had expressly informed Aegis of those options, appellants clearly were prejudiced by the erroneous "duty to inform" instruction, which in essence directed that a verdict must be entered against the appellants. We thus reverse the judgment against appellants.

### B. Directed Verdict and Judgment N.O.V.

■ The district court denied appellants' motions for directed verdict and judgment n.o.v. We find that this was error. After reviewing the evidence and drawing all inferences most favorably to the appellees, we are convinced that the evidence points so strongly in favor of appellants that reasonable persons could arrive at no other conclusion but that a knowing rejection and selection had been made. *Kaye v. Pawnee Construction Co.*, 680 F.2d 1360, 1364 (11th Cir.1982). The Aegis vice-president in charge of purchasing insurance for the company, Mr. Tibbetts, was very knowledgeable of the Florida insurance laws, having been an insurance agent in the state for about twenty years. He testified that he was fully aware of all the options concerning uninsured motorist benefits, knew that Aegis could have uninsured motorist

---

**3.** Appellees do cite some intermediate appellate court decisions containing language that may suggest the existence of a duty to inform. *E.g., Empire Fire and Marine Insurance Co. v. Solomon*, 444 So.2d 1123 (Fla.Dist.Ct.App.1984); *Sirantoine v. Illinois Employers Insurance of Wausau*, 438 So.2d 985 (Fla.Dist.Ct.App.1983); *Lumbermen's Mutual Casualty Co. v. Beaver*, 355 So.2d 441 (Fla.Dist.Ct.App.1978); *Aetna Casualty & Surety Co. v. Green*, 327 So.2d 65 (Fla.Dist. Ct.App.1976). However, none of these cases appear to involve insureds who would know of the statutory options without being told of them by the insurers. Thus, these decisions do not address the issue raised here, and they establish, at most, that where an insured is not otherwise aware of the uninsured motorist options, he cannot make an informed rejection or selection unless the insurer has informed him of the options. Thus, our interpretation of *Spaulding* and *Kimbrell* is perfectly consistent with the decisions cited by appellees.

**4.** We also note that appellees' counsel concluded his closing argument to the jury by telling them that the judge would instruct them that "the law is" that appellants were obligated to inform Aegis of the availability of uninsured motorist coverage in the amount of bodily injury liability limits, that the fact that Mr. Tibbetts, Aegis' vice-president in charge of insurance, "knew all about it" did not relieve the appellants of their duty to so inform Aegis, and that the jury should, therefore, enter a verdict in appellees' favor. Record at 2–170 to 2–171.

benefits up to the general injury limits, and intended to select limits of $100,000 under the National Union policy and reject such coverage entirely under the Lloyds policy. None of the evidence introduced contradicted this testimony.[5] Indeed, Mr. Tibbetts' testimony was corroborated by the testimony of Mr. Legge, the insurance broker who sold Aegis the National Union and Lloyds policies.

Since we hold that a directed verdict or judgment n.o.v. should have been entered, we do not remand this case for a new trial with proper jury instructions. Rather, we remand for the limited purpose of entering judgment in favor of both appellants.

### C. Miscellaneous Claims.

Appellants raise two other issues. Appellant Lloyds argues that the jury verdict should be reversed because the trial judge erroneously instructed the jury that it, rather than the appellees, had the burden of proving that Aegis had rejected the uninsured motorist coverage. Appellant National Union argues that the trial court erred in excluding evidence of the amount of workmen's compensation benefits that appellee Diffin received as a result of his injuries. Both issues are moot, since we find that a judgment n.o.v. should have been entered in favor of Lloyds and National Union, even if Lloyds had the burden of proof and evidence regarding the workmen's compensation benefits were inadmissible.

■ At the time appellants filed this appeal, appellees petitioned this court to award them attorney's fees, pursuant to Fla.Stat. § 627.428(1), for services incurred in this appeal. That petition was carried with this case. We now deny the petition on the ground that this court has held against appellees, and thus they are not entitled to attorney's fees under that Florida statute, which authorizes the award of attorney's fees "[u]pon the rendition of a judgment or decree ... against an insurer and in favor of any insured ... or the named beneficiary."

### III. CONCLUSION

We hold that the trial court erroneously instructed the jury that insurers have an absolute duty to inform under Florida law, that this error was harmful, and that under a correct statement of Florida law appellants' motions for a directed verdict and judgment n.o.v. should have been granted. We, thus, reverse the judgment and remand for the limited purpose of entering a judgment in favor of appellants. As we understand it, the result of such judgment will be that Mr. Diffin is not entitled to any benefits under the Lloyds policy, and that up to $100,000 is available to him under the National Union policy.

Accordingly, the judgment of the district court is REVERSED and this case is REMANDED for proceedings consistent with this opinion.

---

5. Basically, the other evidence indicated only that neither insurance company had informed Aegis of the options, nor made a verbal or written offer of uninsured motorist coverage, and that Aegis had not made a *written* rejection or selection. The appellees had attempted to impeach Mr. Tibbetts' testimony by introducing evidence of prior inconsistent statements regarding an earlier policy Aegis had with the Hartford Insurance Company. At trial Mr. Tibbetts had testified that an insurance broker had not advised him of the uninsured motorist options in regard to the Hartford policy, but at a prior deposition testimony he said that he had been so advised. These statements, though inconsistent, did not conflict with his testimony about his intentions regarding the National Union and Lloyds policies.