GLICKSTEIN, Judge.
This is an appeal from an amended final summary judgment. The facts show that as the result of an accident with a tractor, Mitch Banack was permanently and totally disabled. His father, appellant in this case (Banack), was then covered by two insurance policies: an automobile liability policy with Florida Farm Bureau Insurance Company (Florida Farm), and a catastrophe excess policy (umbrella policy) with Reserve Insurance Company (Reserve). Appellee contends that as a licensed insurance agent, Banack sold himself both policies. Appellant contends there is a question of material fact on this point.
The liability policy had $100,000 per person, $300,000 per occurrence liability coverage limits, with $25,000 per person and $50,000 per occurrence uninsured motorist coverage limits. The umbrella policy had a $1,000,000 coverage limit with no mention of uninsured motorist protection. To date, Banack has received the amount provided for uninsured motorist’s coverage under the liability policy, $50,000, plus $50,000 from the tractor driver’s insurer, in addition to medical, social security, and other payments not relevant to the appeal.
Banack sought uninsured motorist coverage from Reserve, but Reserve was declared bankrupt. Florida Insurance Guaranty Association (FIGA) stepped into Reserve’s shoes for obligations up to $300,000 and is now appellee in this case. The cause was set for trial, but the trial court declared summary judgment in favor of FIGA, then granted a motion for rehearing. After rehearing, the trial court entered an amended final judgment reaffirming the summary judgment.
There are two issues:
I. Whether the trial court erred in entering summary judgment against Banack because uninsured motorist coverage was neither offered to him nor rejected by him. We conclude that it did.
II. Whether the tractor that was involved in the case was properly excluded from coverage by the uninsured motorist policy on summary judgment. We conclude that it was not.
I.
The accident occurred on June 18, 1974, and the statute pertaining to insurers providing uninsured motorist coverage in effect at that time was section 627.727(1), Florida Statutes, effective 1971. FIGA does not contest the applicability of this statute, nor the interpretation made by this court in First State Insurance Company v. Stubbs, 418 So.2d 1114 (Fla. 4th DCA 1982), holding that failure to offer uninsured motorist coverage on an excess liabil *844 ity policy obligates the insurer to provide such coverage. Instead, it argues that by choosing low uninsured motorist coverage limits on the liability policy, Banack manifested an intent to reject such coverage with the umbrella policy. We disagree.
We also disagree with Banack’s argument that because Reserve did not expressly offer uninsured motorist coverage, they must be held to have provided it by law. An express offer is not what the case law requires. In Kimbrell v. Great American Insurance Company, 420 So.2d 1086 (Fla.1982), the Florida Supreme Court was faced with a decision from this court approving a trial court judgment awarding only the low uninsured motorist coverage required by law for a corporation. The coverage was selected when the policy was originally purchased, but there were no renewed offers of higher coverage when the insured obtained a new policy adding a new business as insured. Our highest court rejected the contention that there must have been a new express offer of higher coverage and a written rejection. It held that the statute requires only that rejection of uninsured motorist coverage or choice of low limits be knowingly made. Id. at 1088. Although, the Kimbrell decision notes, a trier of fact may consider whether an express offer was made, this consideration is not dispositive of the issue, because an insured may be aware of the existence of coverage from other sources. It is important to also remember from Kimbrell, though, the court’s statement that knowing rejection or selection of low coverage amounts is a question for the trier of fact.
These principles were reaffirmed in American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla.1983), where the Florida Supreme Court was again faced with a decision from this court on the subject. This time, our decision was reversed. We had required an automatic uninsured motorist increase to the amount of liability coverage after an insured, who originally had a low uninsured motorist limit, significantly modified his liability policy without being informed of his right to increased uninsured motorist coverage. The Spauld-ing decision rejected our holding which required reinformation of an insured after every “material” policy endorsement, reiterating its Kimbrell rationale that knowledge of the available coverage is all that an insurer must show. In Spaulding, the court also reaffirmed that whether there was knowledge was for the trier of fact.
This decision was followed in the recent Tarlton v. Dixie Insurance Company, 450 So.2d 300 (Fla. 2d DCA 1984), which is closest factually to the current case, because it involved an excess coverage policy. The insured in Tarlton had carried a low uninsured motorist limit in connection with her liability policy, and had no uninsured motorist provision attached to her excess policy. Citing Spaulding, the second district spurned the insured’s argument that she had received no statement offering her the higher uninsured motorist protection, finding that her other policy clearly contained the necessary offer. An important point with regard to the Tarlton decision is that the case reached the court on appeal from an order rendered on a motion for summary judgment.
This case is also in that posture, a jury trial having been requested, but the matter having been disposed of prior to reaching the finder of fact. Unlike Tarl-ton, however, there is a material dispute on the vital fact of knowledge. Knowledge was apparently not something which could have been seriously disputed in Tarlton, because the insured in that case had been simultaneously offered both policies, and the uninsured motorist coverage limits were offered at the same time. The application for the second policy stated that the insured had rejected uninsured motorist coverage. Here, though, while the facts that Banack chose only low coverage on his liability policy and he was an insurance agent who presumable knew of such things strongly indicated that he had the knowledge required in such cases, it does not conclusively establish knowledge as a fact. Banack alleges that excess insurance poli *845 cies did not provide at that time for uninsured motorist coverage, so he did not know that such protection was available.[1] There seems therefore to be a dispute on the vital fact of whether there was a knowing rejection of the uninsured motorist provision. In Spaulding and Kimbrell the Florida Supreme Court specifically said that this issue is for the trier of fact. In light of that, we conclude that the trial court erred in rendering summary judgment on this point.
II.
The second issue concerns whether the tractor involved in the accident was covered by the Reserve/FIGA policy. The trial judge looked to the liability policy issued by Florida Farm, which excluded farm-type tractors. His basis for looking at that policy was that the excess policy somehow incorporated the terms of the liability policy. Were this true, it would be unnecessary for the Reserve policy to include either a definitions or an exclusions section. Although the excess policy is supplemental to the underlying liability policy, it is a separate contract issued by a different company, Reserve. Reserve accepted liability according to the terms and conditions set out in its contract, having calculated the premiums and risk accordingly. Therefore, its own provisions of coverage and exclusion should control absent some clear intent providing to the contrary.
Reserve/FIGA’s risk should be governed not by Florida Farm’s choice of uninsured motorist risk, but by either its own contract or section 627.727, Florida Statutes (1973). It is arguable that because the uninsured motorist coverage was not contracted for but grafted on by statute, the terms of coverage should be according to the statute. The uninsured motorist coverage required by case law in situations where there was no offer made is derived from section 627.727(1), Florida Statutes (1973), which provides that there shall not be liability insurance issued unless protection is also provided for damages from the owners or operators of “uninsured motor vehicles.” Section 627.732 defines a motor vehicle as “a sedan, station wagon, or jeep type vehicle not used as a public livery conveyance,” including “any other four-wheel motor vehicle used as a utility automobile.” Ordinarily, a gardening tractor would not be considered a “utility automobile,” but the words of the statute are “used as a utility automobile.” The deciding factor in this respect is a factual one, whether the tractor was being used as a utility automobile, since this is the only situation in which coverage applies. On remand, the trial court should reconsider this issue, using the applicable definitions and standards, and taking evidence to determine whether the tractor should be considered a motor vehicle in light of them. Similarly, all other issues can be appropriately resolved at trial.
ANSTEAD, C.J., and BARKETT, J., concur.

. Appellant points out that the Reserve policy did not provide for uninsured motorist coverage; and that Aetna Casualty & Surety Co. v. Fulton, 362 So.2d 364 (Fla. 4th DCA 1978), the initial decision involving an umbrella policy, was decided years after the issuance of the Reserve policy.