UPCHURCH, Chief Judge.
Thomas Duane appeals a final order dismissing his fourth amended complaint against Safeco Insurance Company in an action to recover uninsured motorist benefits.
Duane was employed by Florida Power and Light Company which loaned him the funds to purchase a pick-up truck. Duane executed an “Employee Vehicle Agreement” which set out the repayment terms and provided that FPL would hold the title until the loan was repaid. The agreement also provided that Duane could use the vehicle at work subject to the following conditions:
Company: (a) shall arrange for compliance by the Employee and/or operator of the motor vehicle with the requirements of the Florida Financial Responsibility Law, and the Florida Automobile Reparations Reform Act, except that the benefits payable under the Florida Automobile Reparations Reform Act shall be subject to the exclusions in Subsection 627.736(2) of said Act; (b) shall secure for the benefit of Company and Employee and/or operator of the motor vehicle excess indemnity protection with a combined bodily injury and property damage limit of $500,000 each occurrence and pay one-half of the total cost of said excess indemnity protection; (c) shall provide Fire, Theft and Comprehensive protection covering the actual cash value of the motor vehicle; (d) shall provide full collision or upset protection which will provide for $50.00 deductible on each collision, which protection is to apply when motor vehicle is used on Company business and also when motor vehicle is used for personal use, except, when damage is caused while Employee or the operator of said motor vehicle is under the influence of alcohol or narcotic drugs, this collision or upset protection shall not apply; and (e) shall pay Employee monthly a predetermined amount per mile for each and every mile the motor vehicle is operated by Employee in carrying out Employee’s designated activities for Company, provided, however, that such mileage rate per year may be adjusted from time to time at the Company’s sole discretion. Employee: (a) shall pay to Company one-half the total actual cost of the above-mentioned excess indemnity protection and hereby authorizes Company to deduct monthly from Employee’s payroll earnings an amount sufficient to reimburse Company for Employee’s said share of the actual current monthly premium charged for such protection; (b) HEREBY REJECTS UNINSURED MOTORIST’S COVERAGE AND AUTHORIZES COMPANY TO CONVEY SUCH REJECTION IN EMPLOYEE’S BEHALF AS MAY BE REQUIRED; (c) shall file mileage and other required reports on forms approved by Company; (d) shall keep the motor vehicle at all times in good mechanical and safe operating condition and shall secure and pay for at his cost and expense all operating costs and expenses in connection with the ownership and operation of the motor vehicle, and Company shall not service or repair the motor vehicle in any manner whatsoever; (e) shall present his motor vehicle at any time designated by Compa *861 ny for audit and inspection by one of the Company’s representatives, and, in the event the motor vehicle shall be found to be in a condition unsuitable for carrying on his designated activities for Company, then Employee shall no longer use the motor vehicle under this agreement and this agreement shall be suspended during the period of unsuitability; and (f) shall make reports immediately to Company on forms approved by Company with reference to any and all accidents covered by this agreement, (emphasis added).
In June, 1983, Duane was injured in a collision with a vehicle driven by Timothy Goodrich. Duane filed suit against Goodrich and others, including Safeco which had allegedly insured the pick-up truck. Duane alleged that Safeco had issued a policy of excess indemnity to FPL and him, that Safeco was under a duty to offer or inform Duane of his right to elect uninsured motorist coverage, that he was never offered uninsured motorist coverage by Safeco, that he never made an informed and knowing rejection of uninsured motorist coverage, and that Safeco never received a written rejection of uninsured motorist coverage from any named insured. Duane further alleged that he was entitled to uninsured motorist coverage because Safeco had breached its statutory and contractual duty to provide uninsured motorist coverage and Goodrich had failed to maintain sufficient insurance to pay for his damages.
Safeco moved to dismiss, contending in part that the complaint failed to establish that Safeco had a duty to provide or offer uninsured motorist coverage or that it has breached any contractual duty. The trial court dismissed the complaint and we affirm.
Section 627.727(1), Florida Statutes (1981)[1] provides in part as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage.
This statute provides that uninsured motorist coverage is, by operation of law, equal to the general liability coverage provided by the insurance carrier unless an insured selects otherwise. American Fire & Indemn. Co. v. Spaulding, 442 So.2d 206 (Fla.1983). The 1981 statute did not mandate that the selection be in writing[2] or in any specific form. The statute, however, does require that a rejection of uninsured motorist coverage or a selection of lower limits of coverage must be knowingly made. Spaulding; Kimbrell v. Great American Ins. Co., 420 So.2d 1086 (Fla.1982).
In the present case, the employee vehicle agreement specifically authorized FPL to act for Duane in obtaining the insurance on the pick-up truck. Liability cannot be imposed on Safeco for the failure of FPL to ensure that the rejection by Duane was knowingly made. There is no allegation that the agreement between Duane and FPL was fraudulent, the product of overreaching, or even that the agreement was not knowingly made and understood.
AFFIRMED.
*862 DAUKSCH, J., concurs.
SHARP, J., dissents with opinion.

. On appeal, Duane has referred to the 1983 version of section 627.727. Duane purchased the vehicle and executed the agreement with FPL in July 1982 and that presumably is the time that any insurance became effective. Thus, it appears that the 1981 statute would govern here.

. Effective October 1, 1982, section 627.727(1) was amended to require that the rejection of uninsured motorist coverage be in writing. Ch. 82-243, §§ 544, 813, Laws of Fla.