SHARP, Judge.
Carl and Billye Williams appeal from a final summary judgment entered in favor of the Florida Insurance Guaranty Association (FIGA). The issue in this case is just how far FIGA is legally deemed to have stepped into the shoes of an insolvent insurance company pursuant to Chapter 631. We think the trial court correctly decided FIGA’s liability does not extend far enough to include the negligence of the insurance agent in failing to advise the Williamses to obtain a different policy than the one actually issued.
In November of 1984 Billye contacted the Jefferson-Allsopp Insurance Agency to obtain auto insurance coverage for herself, her family and her business, Russ’ Bargain House, Inc. Jefferson-Allsopp is a general lines insurance agency. It was alleged that the individual employee for Jefferson-Allsopp knew Billye and Carl had no other auto insurance; and they thought the policy issued by Iowa National Mutual Insurance Company took care of their needs.
In fact, the Iowa policy had Russ’ Bargain House, Inc. as the named insured. It also listed four vehicles, one of which was owned by Carl, as the “covered vehicles.” In June of 1985 Carl was injured in an auto collision with an underinsured driver. At the time, Carl was not driving one of the four “covered vehicles.” Carl and Billye sued Iowa for uninsured motorist coverage, which Iowa denied. Iowa was declared insolvent in November of 1985, and FIGA, as the statutory successor of Iowa, was brought into the litigation.
As the Iowa policy stands, Carl had no uninsured motorist coverage for this accident. He is not a named insured, and he was not driving a “covered vehicle." Policies which have corporations as the named insured have no family members to whom uninsured motorist coverage is extended by the normal uninsured motorist provisions in common use in this state. Travelers Insurance Co. v. Bartoszewicz, 404 So.2d 1053 (Fla.1981); Pearcy v. Travelers Indemnity Co., 429 So.2d 1298 (Fla. 3d DCA), rev. denied, 438 So.2d 833 (Fla. *254 1983). Here, Iowa’s uninsured motorist endorsement extends coverage to “you or any family member.” But, “you” is defined as “the person or organization shown as the ‘named insured’.”
To bridge the gap between what the Iowa policy actually says and what the Williamses claim it should have provided, they allege Iowa (through its agent, Jefferson-Allsopp) was negligent in not issuing a form of coverage which would have protected Carl personally. For purposes of the summary judgment, FIGA conceded the negligence of Jefferson-Allsopp’s employee could bind Iowa. But, there is still a gap between Iowa’s potential liability and FIGA’s.
Chapter 631 was intended to provide a mechanism to pay “covered claims” under certain insurance policies issued in this state to Florida residents in the event an insurance company becomes insolvent before paying a covered claim to an insured.[1] However, the full gamut of a defunct insurance company’s liabilities was not intended to be shifted onto FIGA. The applicable statute defines “covered claim” as:
[A]n unpaid claim, including one of unearned premiums, which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies ....
§ 631.54(3), Fla. Stat. (1983). Further, FIGA’s scope of liability is specified as being “[t]o the extent of [the insurer’s] obligation, on the covered claims” exclusive of penalties and interest.[2]
If FIGA had been intended to be a successor in all regards to an insolvent insurer’s obligations and liabilities to a policyholder, such limiting language would not be necessary. The legislature could simply have made FIGA a statutory successor to defunct insurance companies. No doubt because it was intended that the claims preserved for payment by Chapter 631 would be manageable and not bankrupt the statute’s funding and payment mechanism, it was necessary to limit them not only as to total amount, but also as to substance— covered claims under existing policies.
In Rivera v. Southern American Fire Ins. Co., 361 So.2d 193 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1372 (Fla.1979), the insureds sued their defunct insurance company and FIGA for $25,000 in excess of the policy limits for the insurance company’s having dealt with them in bad faith. The court held that FIGA is not vicariously liable for the tortious acts of members’ insurers. Although the language used by the court may go farther than was necessary, clearly it limited recovery under Chapter 631 against FIGA to actual claims covered under a policy. See also FIGA v. Price, 450 So.2d 596 (Fla. 2d DCA), rev. dismissed, 453 So.2d 1365 (Fla.1984).
The Williamses argue that Carrazana v. FIGA, 374 So.2d 581 (Fla. 3d DCA 1979), supports their theory that FIGA can be liable under Chapter 631 for negligent deeds of an insurance agent who issues a policy. In Carrazana, the plaintiff alleged that the insured did not “knowingly and intentionally” make a rejection of uninsured motorist coverage. The court held that this created a material issue of fact which could not be resolved by summary judgment.
The liability triggering mechanism in Carrazana was not the negligence of the insurance company in the manner it handled a renewal or issued a new policy, but rather the statutorily mandated duty imposed on insurance companies in this state by section 627.727(1) that the insured make a “knowing rejection of uninsured motorist coverage or a knowing choice of low limits.” [3] The mechanism selected by the legislature to enforce this duty is to make insurance policies issued or renewed in violation of a knowing rejection or limitation of uninsured motorist coverage read as though the uninsured motorist coverage is equal to the liability coverage. Banack v. FIGA, 467 So.2d 842 (Fla. 4th DCA 1985). The uninsured motorist coverage in such a *255 case is deemed to be part of the policy, and thus FIGA must assume it as part of a “covered claim.”
Unlike Carrazana, there is no statute involved in this case which requires Iowa’s policy to include uninsured motorist coverage for Carl. The insurance agent may have been negligent in advising the Williamses, or in failing to issue them the most advantageous policy. But, there is no actual or statutory uninsured motorist coverage for Carl under the policy issued; nor was any such coverage promised. Based on the errors and omissions of the insurance agent as alleged in this case,[4] we do not think there is a sufficient basis to find a “covered claim” under Chapter 631.[5]
AFFIRMED.
DAUKSCH and COBB, JJ„ concur.

. §§ 631.51(1), 631.54(3), Fla. Stat. (1983).

. § 631.57(l)(b), Fla. Stat. (1983).

.§ 627.727(1), Fla. Stat. (1977).

. This complaint is entitled "Second Amended Complaint," however, the record does not contain a copy of the initial complaint or the First Amended Complaint.

. But see FIGA v. Avellaneda, 363 So.2d 35 (Fla. 3d DCA 1978).