678 So.2d 324 (1996)
The TRAVELERS INSURANCE COMPANY, et al., Petitioners,
v.
Brett Allan WARREN, etc., Respondent.
No. 85337.
Supreme Court of Florida.
July 18, 1996.
*325 Cecil L. Davis and R. William Roland of McConnaughhay, Roland, Maida & Cherr, P.A., Tallahassee; and George A. Vaka of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Petitioners.
James H. White, Jr. of Staats, White & Clarke, Panama City, for Respondent.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Nationwide Insurance Companies, Amicus Curiae.
Louis K. Rosenbloum of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mithell, P.A., Pensacola, for The Academy of Florida Trial Lawyers, Amicus Curiae.
GRIMES, Justice.
We review Warren v. Travelers Insurance Co., 650 So.2d 1082, 1084 (Fla. 1st DCA 1995), wherein the district court of appeal certified the following question to be of great public importance:
MAY AN INJURED PERSON WHO IS ENTITLED TO RECOVER BODILY INJURY LIABILITY BENEFITS, BUT WHOSE DAMAGES EXCEED THE POLICY LIMIT FOR LIABILITY COVERAGE, ALSO RECOVER UNDER THE SAME POLICY FOR UNINSURED MOTORIST BENEFITS, WHERE THE POLICY EXCLUDES THE INSURED VEHICLE FROM ITS DEFINITION OF "UNINSURED VEHICLE?"
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
The pertinent facts are undisputed. In April of 1990, Dianna Lynn Warren was a *326 passenger in a car driven by Celeste Chancey Bryant when the car left the roadway and plunged into Fanning Bayou. Both Warren and Bryant were killed in the accident.
The car was owned by Bryant's father, Edward Chancey, and insured under a policy issued by The Travelers Insurance Company and The Phoenix Insurance Company ("insurers"). The policy provided for $50,000 of liability coverage per person and $50,000 of uninsured motorist ("UM") coverage per person. Further, the policy provided that "[a]nyone else while occupying your car if the occupancy is (or is reasonably believed to be) with your permission ... is also an insured "for purposes of UM coverage. The policy defined an uninsured motor vehicle to include an insured vehicle "to which a bodily injury liability insurance policy or bond applies at the time of the accident, but the limits are less than the total damages for bodily injury or death resulting from the accident." However, the policy also provided that "your car"the car insured under the policywas not an uninsured motor vehicle within the meaning of the policy.
As personal representative of his wife's estate, Brett Allan Warren sought recovery, alleging that his wife's injuries and wrongful death were caused by the negligent operation and/or the negligent maintenance of the car. The estate settled with the insurers for $50,000, the liability coverage limit under the policy. The estate, however, reserved all claims for benefits under the UM provisions of the policy and subsequently made a demand upon the insurers, claiming entitlement to UM benefits under the same policy. The insurers denied the claim, and the estate filed an action claiming entitlement to UM benefits.
The trial court granted summary judgment in favor of the insurers, concluding that the "your car" exception precluded the estate from recovering UM benefits. The district court of appeal reversed, concluding that section 627.727(3)(b), Florida Statutes (1989),[1] overrode the insurance policy's "your car" exception, thereby allowing the estate to recover both liability and UM benefits under the same policy. Warren, 650 So.2d at 1083-84. Coincidentally, less than seven months later, the Second District Court of Appeal concluded that section 627.727(3)(b) does not require insurers to issue policies that would enable class II insureds, i.e., passengers (other than a named insured or resident relatives of a named insured), who are injured in a single-car accident to recover both liability and UM benefits under the same policy. Bulone v. United Servs. Auto. Ass'n, 660 So.2d 399, 400 (Fla. 2d DCA 1995).[2] The Bulone court also certified conflict with Warren. Id.
In the instant case, the "your car" exception would clearly prevent the estate from collecting under both the liability and the UM provisions of the policy. However, all automobile insurance policies must offer UM protection as broad as the UM statute requires. Valiant Ins. Co. v. Webster, 567 So.2d 408, 410 (Fla.1990). Therefore, the issue before us is whether section 627.727(3)(b) negates the effect of the policy's "your car" exception.
Section 627.727(3)(b) was an amendment to the UM statute enacted as chapter 89-243, Laws of Florida. In order to determine the effect of the amendment, it is necessary to consider the evolution of the UM statute prior to the passage of chapter 89-243. In Dewberry v. Auto-Owners Insurance Co., *327 363 So.2d 1077, 1081 (Fla.1978), this Court interpreted the UM statute to require a reduction in UM coverage to the extent of the receipt of any payments from the tortfeasor's liability coverage. In 1984, however, the legislature sought to provide that benefits paid under the tortfeasor's liability coverage should be an offset against damages rather than against the claimant's UM coverage. Ch. 84-41, § 1, at 95, Laws of Fla. The legislature failed to fully accomplish its goal because it only amended subsection (1) of the UM statute and did not address subsection (3). As a result, in cases where the claimant's UM coverage exceeded the tortfeasor's liability coverage, payments from the tortfeasor's liability coverage would offset the amount of damages but no longer reduce the claimant's UM coverage. However, because the legislature failed to amend subsection (3) of the statute, if the tortfeasor's liability coverage exceeded the claimant's UM coverage, "there was simply no uninsured motor vehicle upon which to predicate a claim for UM coverage." Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393, 396 (Fla.1990).
Prior to this Court's decision in Shelby, the legislature enacted chapter 88-370, Laws of Florida, which reinstated the Dewberry concept of setting off the liability coverage payments from UM coverage rather than from the damages. However, the next year, the legislature passed chapter 89-243 containing the amendment at issue in this case. From the House of Representatives' final staff analysis and economic impact statement, it is clear that the amendment was intended to return UM coverage to its pre-1988 status in which liability payments would be offset against damages rather than UM coverage. Fla. H.R. Comm. on Ins., CS for HB 331 (1989) Staff Analysis (June 30, 1989). Under the heading "EFFECT OF PROPOSED CHANGES," the staff analysis states: "The bill reverses the amendments made by section 15 of chapter 88-370, thereby restoring excess uninsured motorist coverage. It also amends s. 627.727(3)(b), to clear up Legislative intent that UM coverage is excess." Id. By referencing Shelby Mutual Insurance Co. v. Smith, 527 So.2d 830 (Fla. 4th DCA 1988), the staff analysis makes plain that chapter 89-243 amended section (3)(b) of the UM statute to ensure that the UM coverage would be excess over liability coverage even in instances where the tortfeasor's liability coverage was greater than the claimant's UM coverage. See id.
The staff analysis does not suggest that chapter 89-243 was intended to enable class II insureds who are injured in a single-car accident to recover both liability and UM benefits under the same policy. Thus, we hold that section 627.727(3)(b), enacted as chapter 89-243, reinstated the principle that liability payments shall only be set off against damages rather than the UM coverage, but it does not stack UM coverage on top of liability coverage under one policy for the benefit of class II insureds.[3] Section 627.727(3)(b) states that a vehicle constitutes an uninsured motor vehicle when the liability insurer of the vehicle has provided liability coverage for its insured which is less than the total damages sustained by the claimant. Having determined that section 627.727(3)(b) does not require a stacking of both liability and UM benefits under the same policy, we therefore conclude that the "liability insurer" referred to in section 627.727(3)(b) means an insurer other than the insurer providing UM coverage to the claimant.
The legislature's response to this Court's decision in Brixius v. Allstate Insurance Co., 589 So.2d 236 (Fla.1991), reinforces our interpretation of section 627.727(3)(b). In Brixius, the claimant was injured in a single-car accident while riding as a passenger in a car owned by her but which was driven by an uninsured friend. 589 So.2d at 236-37. While the claimant's car was "insured" for purposes of liability coverage, the claimant could not recover liability benefits because of a family-household exclusion contained in her *328 policy. Consequently, she sought to recover UM benefits under her policy. Her insurer denied coverage based on a policy provision much like the "your car" provision at issue in the instant case. On review, this Court upheld the "your car" exception relying upon our prior decision in Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172, 1172 (Fla. 1977), in which we had held that a vehicle cannot be both an uninsured and insured vehicle under the same policy. Brixius, 589 So.2d at 237-38.
Responding to our decision in Brixius, the legislature amended the UM statute in 1992 to add section 627.727(3)(c) so as to avoid the inequity of denying benefits to a class I insured who had paid for the liability coverage to protect permissive users and had also paid for UM coverage. Bulone, 660 So.2d at 404 n. 7; see also Fla. S. Comm. on Com., SB 170H (1992) Staff Analysis (June 2, 1992). Section 627.727(3)(c), Florida Statutes (Supp. 1992), provides that where a nonfamily permissive user is driving an insured vehicle and causes injury to a class I insured passenger, the insured vehicle will be considered uninsured for purposes of UM coverage.[4] Significantly, section 627.727(3)(c) did not stack UM coverage on top of liability coverage under a single policy. If the legislature meant section 627.727(3)(b) to mean what the court below now says it means, then there would have been no reason whatsoever to enact section 627.727(3)(c).
There are other reasons why we do not believe that the legislature intended for class II insureds to recover both liability and UM benefits under the same policy. As noted in Bulone:
It is also important to consider that an insurance carrier has no right of subrogation against its own insured. Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA), cert. denied, 280 So.2d 685 (Fla.1973). When USAA pays an underinsured motorist claim involving a solvent tortfeasor, it typically receives subrogation rights from its insured against the tortfeasor. See § 627.727(6), Fla. Stat. (1993). If the "underinsured" tortfeasor is construed to include the insured on the policy, then the subrogation right cannot exist. Without a subrogation right, there is nothing to distinguish this theory of underinsured motorist coverage from liability coverage. Thus, the result is a policy that provides twice the disclosed limit of liability coverage for the claims of passengers. See Millers Casualty Ins. Co. v. Briggs, 100 Wash.2d 1, 665 P.2d 891 (1983).
....
The interpretation of section 627.727 in Warren creates statutory requirements never disclosed to the insurance carriers or to the families who have purchased the coverage. If such class II coverage is a desired public policy, the legislature should give the insurance companies notice of the change so that they can increase their premiums to cover the risk. Likewise, before the legislature requires Florida's families to pay the premiums necessary to double protection for class II insureds, this issue should be debated by the legislature.
660 So.2d at 404-05.
Furthermore, under the Warren court's interpretation of section 627.727(3)(b), class II insureds will be in a better position than class I insureds even though the premiums are paid by class I insureds. This is because a class I insured can never make a claim against the liability provisions of the policy but a class II insured can recover under both the liability and the UM provisions. The practical effect of the decision below is to double the liability coverage as it relates to claims by class II insureds. We simply do not believe that the legislature intended such a result.
Our position is further buttressed by the decisions of a number of our sister states. In his treatise on uninsured and underinsured motorist insurance, Professor Widiss aptly summarizes the position of our sister states on the question of whether a claimant *329 may recover liability as well as UM benefits under the same policy:
Judicial decisions in several states have affirmed the enforceability of provisions excluding coverage for persons who are injured as a consequence of the negligent operation of a vehicle that is insured by the insurance policy which includes the underinsured motorist coverage providing the benefits which are sought by a claimant. One persuasive reason for sustaining this limitation on the coverage is to preclude transforming underinsured motorist insurance into liability insurance for the operators of a vehicle covered by the applicable motor vehicle policy which includes both coverages.... A transformation of underinsured motorist insurance into liability insurance is neither intended by insurers nor contemplated in setting the premiums for the coverage.
....
When there is a single vehicle accident involving an insured vehicle, sometimes a claimantusually a passenger in the vehicle-attempts to recover under both the vehicle's liability insurance providing coverage for the driver and the underinsured motorist insurance in the same insurance policy. In these cases, courts have almost uniformly rejected such claims. The result in these cases has sometimes been predicated on the provision in the coverage terms which explicitly precludes treating the "insured vehicle" as an "underinsured vehicle." As the Louisiana Court of Appeal succinctly put it: "One cannot be insured with respect to liability coverage and underinsured with respect to UM coverage under the same insurance policy ... and policy provisions which effectuate this result do not violate the terms of Louisiana's uninsured motorist statute."
3 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 35.7, at 178-82 (2d ed. 1995) (footnotes omitted).
Accordingly, we quash the decision below and direct that summary judgment be reinstated in favor of the insurers. Additionally, we approve the decision in Bulone. We also disapprove of Travelers Insurance Cos. v. Chandler, 569 So.2d 1337 (Fla. 1st DCA 1990), to the extent it is inconsistent with our decision herein.[5]
It is so ordered.
OVERTON and HARDING, JJ., concur.
WELLS, J., concurs with an opinion, in which SHAW, J., concurs.
ANSTEAD, J., dissents with an opinion, in which KOGAN, C.J., concurs.
WELLS, Justice, concurring.
I concur in the result reached by the majority that under section 627.727(3)(b), Florida Statutes (1989), a class II insured[6] cannot recover both liability and uninsured motorist (UM) coverage under the same insurance policy; however, I do not agree with the initial reasons upon which the majority reaches this result. In its opinion, the majority determines the legislative intent not from the plain, unambiguous language of section 627.727(3)(b), Florida Statutes, but from the legislative history surrounding this statute. If decided solely on statutory construction, I would find that the plain language of section 627.727(3)(b), Florida Statutes, allows a class II insured to effect a recovery of both liability and UM coverage.
Section 627.727(3), Florida Statutes, states:
(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
....
(b) Has provided limits of bodily injury liability for its insured which are less than *330 the total damages sustained by the person legally entitled to recover damages.
Under the plain language of this section alone, the plaintiff here is entitled to UM coverage. The liability insurer for the tortfeasor's motor vehicle had provided limits of bodily injury coverage which were less than the total damages suffered by the plaintiff, who was an insured for purposes of the UM coverage as a person occupying the covered vehicle. When construing an unambiguous statute, this Court should not depart from the plain meaning of the statute, even if the Court believes that the construction would effect bad policy. See Van Pelt v. Hilliard, 75 Fla. 792, 798, 78 So. 693, 694 (Fla.1918). Moreover, I cannot agree with the majority's reading of the statute's legislative history or its finding of legislative intent.
However, I am compelled to my decision because of the recognition that the right to subrogation is integral to UM coverage under section 627.727, Florida Statutes. This is expressly recognized by the UM statute having a section setting forth specific procedures for subrogation.[7] A court must, whenever possible, give full effect to all statutory provisions by construing related statutory provisions in harmony with one another. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). We have not allowed recovery of UM benefits when there is a substantive bar to subrogation against the tortfeasor which dates from the time of the accident. See Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla.1986). The substantive bar which prevents subrogation from the date of the accident in a situation in which a class II insured could recover UM coverage under a policy which also provides the tortfeasor liability coverage is the fundamental principle of insurance law that an insurer cannot subrogate against its own insured. Bulone v. United Services Auto. Ass'n, 660 So.2d 399, 400 (Fla. 2d DCA 1995); Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295 (Fla. 1st DCA 1982), review denied, 424 So.2d 761 (Fla.1983); 16 George J. Couch, Cyclopedia of Insurance Law § 61:136 (Mark S. Rhodes ed., 2d ed. rev. vol. 1983); 6A John Allen Appleman & Jean Appleman, Insurance Law and Practice § 4055 (1972). The right to subrogation against the tortfeasor distinguishes UM coverage from liability coverage. Bulone. It is upon this basis that I would reach the same result as the majority does today.
SHAW, J., concurs.
ANSTEAD, Justice, dissenting.
I would approve the decision of the district court. Under Florida's uninsured motorist statute, a vehicle is considered to be "uninsured" even when there is liability coverage if that liability coverage is less than the damages sustained by an injured party. Hence, an injured party may recover because the tortfeasor was "underinsured" and had inadequate liability coverage to pay the injured party's damages.
As noted in the concurring opinion of Justice Wells, the uninsured motorist statute is clear and unambiguous in requiring coverage for the pending claim. There is nothing patently unreasonable about such a statute and, given its clarity, we are obligated to follow its mandate without invoking our own view as to the policy it reflects.
KOGAN, C.J., concurs.
NOTES
[1] Section 627.727(3)(b) states:

(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
....
(b) Has provided limits of bodily injury liability for its insured which are less than the total damages sustained by the person legally entitled to recover damages.
[2] Thus, class I insureds are named insureds and resident relatives of named insureds. Conversely, class II insureds are lawful occupants of the insured vehicle who are not named insureds or resident relatives of named insureds. Class II insureds do not pay for UM coverage under the named insureds' policy. Rather, class II insureds are essentially third party beneficiaries to the named insureds' policy. See Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla.1971); Quirk v. Anthony, 563 So.2d 710, 713 n. 2 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 (Fla.1991).
[3] The Second District Court of Appeal has previously concluded that neither the 1983 nor the 1984 version of section 627.727 required insurers to stack UM coverage on top of liability coverage under one policy for the benefit of class II insureds. Fidelity & Casualty Co. v. Streicher, 506 So.2d 92 (Fla. 2d DCA), review denied, 515 So.2d 231 (Fla.1987); State Farm Mut. Auto. Ins. Co. v. McClure, 501 So.2d 141 (Fla. 2d DCA), review denied, 511 So.2d 299 (Fla.), opinion corrected, 512 So.2d 296 (Fla. 2d DCA 1987).
[4] In passing, we note that a claimant who is in the same position as the claimant in Reid still could not recover UM benefits. Section 627.727(3)(c) only applies where a nonfamily permissive user is driving. In Reid, the vehicle was driven by the claimant's sister. 352 So.2d at 1172.
[5] In Travelers Insurance Cos. v. Chandler, 569 So.2d 1337, 1339 (Fla. 1st DCA 1990), the court concluded that a "your car" exception much like the exception at issue in this case was contrary to public policy insofar as it barred a class II insured from recovering both liability and UM benefits under the same policy.
[6] Class II insureds are lawful occupants of an insured vehicle who are not named insureds or resident relatives of a named insured.
[7] Section 627.727(6), Florida Statutes (1989), delineates the procedure to be followed for a UM insurer to preserve its subrogation rights. UM coverage has been vitiated when these procedures are not followed to prejudice the insurer's subrogation interests. New Hampshire Ins. Co. v. Knight, 506 So.2d 75 (Fla. 5th DCA 1987).