KHOUZAM, Judge,
Dissenting.
I would affirm. This is a case of first impression in Florida,[9] and I believe that under the unique facts of this case the trial court correctly determined that Smith was entitled to coverage under the UM portion of his policy. The majority holds that Smith should be denied coverage because the policy unambiguously states that an “uninsured motor vehicle” cannot be one that has been insured for liability under that policy. But applying this exclusion to the facts of this case results in the denial of UM benefits for which Smith paid premiums simply because he has also paid for liability coverage for Ackermecht — a non-family member and third party beneficiary of Smith’s policy who was found by a jury to be ninety-two percent at fault for the collision due to negligent maintenance of the vehicle. This result is inequitable and flies in the face of the purpose of UM insurance as set forth in section 627.727, Florida Statutes (2006).
The overarching purpose of section 627.727 is to ensure coverage for certain class I insureds[10] who are injured or killed *865 due to the negligence of uninsured or un-derinsured drivers who are unable to make the injured party whole. Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla.1971). “The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.” Id. The legislature announced this purpose in subsection 627.727(1), which mandates that insurers must provide UM coverage to any insured who does not expressly reject it and explains this requirement as follows:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued ... unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from oumers or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom,.
§ 627.727(1) (emphasis added).
As the majority acknowledges, precisely because “the uninsured motorist statute Vas enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motoristf,] it is not to be “whittled away” by exclusions and exceptions.’ ” Young v. Progressive Se. Ins. Co., 753 So.2d 80, 83 (Fla.2000) (quoting Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla.1971)). To that end, “a provision in a policy providing exceptions and/or exclusions not authorized, by the statute [is] not enforceable.” Lee v. State Farm Mut. Auto. Ins. Co., 339 So.2d 670, 672 (Fla. 2d DCA 1976). Indeed, “[t]his and other Florida courts have consistently held that restrictions on uninsured motorist coverage are against public policy and void.” Id.
It is true that section 627.727 does not squarely address the unique facts of this case. But subsection 627.727(3)(c) does address an analogous factual scenario:
(3) For the purpose of this [uninsured motorist] coverage, the term “uninsured motor vehicle” shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
[[Image here]]
(c) Excludes liability coverage to a non-family member whose- operation of an insured vehicle results in injuries to the named insured or to a relative of the named insured who is a member of the named insured’s household.
This subsection was enacted to avoid the inequity created by the-Florida Supreme Court’s decision in Brixius v. Allstate Insurance Co., 589 So.2d 236 (Fla.1991). See Travelers Ins. Co. v. Warren, 678 So.2d 324, 328 (Fla.1996).
In Brixius, Jill Brixius was injured in a single-car accident. At the time of the accident, Brixius was riding as a passenger and her uninsured friend was driving. Brixius owned the vehicle and it was insured by Allstate. Liability benefits were not available to Brixius under the liability portion of her policy due to the family-household exclusion, so Brixius sought benefits under the UM portion of her policy. Allstate denied her claim based on a provision that was virtually identical to the one at issue in the instant case. It provided that “an uninsured auto is not a vehicle defined as an insured auto under the liability portion of this policy.” Brixius, 589 So.2d at 237.
In a four-to-three decision, the Florida Supreme Court approved the denial of coverage. There were two dissenting opinions. Both posited that the court should have approved Jernigan v. Progressive *866 American Insurance Co., 501 So.2d 748, 750 (Fla. 5th DCA 1987), in which the Fifth District held that “the test for determining whether a vehicle is insured for purposes of uninsured motorist coverage, is not whether the owner or operator of the vehicle has a liability insurance policy, but whether insurance is available to the injured plaintiff.” Justice Kogan also opined in his dissent that the exclusion found in Brixius’s policy was “so directly contrary to the policies of no-fault and the uninsured motorist statute as to be void on its face.” Brixius, 589 So.2d at 238 (Ko-gan, J., dissenting). As Justice Kogan explained;
Uninsured motorist coverage is an integral part of this state’s system of no-fault automobile insurance. It is “mop up” insurance that covers'losses- occasioned by the fact that other motorists failed to obtain insurance covering their own negligence....
The central policy [of UM insurance], in other words, is at the very heart of the rio-fault concept. Injured parties are discouraged from clogging the courts with minor traffic-injury cases; and they simultaneously are given a swift, sure method of covering their own losses. No-fault itself is undermined precisely to the extent that these policies are undercut. I can only conclude that the majority opinion unnecessarily undercuts these policies and, hence, the foundations of no-fault insurance itself.
Id. , .
Apparently finding the dissenting opinions persuasive, the legislature amended the UM statute in 1992 to include section 627.727(3)(c). See Ch. 92-318, § 79, at 3148-49, Laws of Fla.- The staff analysis stated that the amendment was meant to address the issue in Brixius, effectively superseding the majority opinion and allowing for UM coverage in future scenarios like Brixius’s:
Coverage was denied since liability benefits were not available to Brixius because under the policy, liability coverage did not apply for bodily injury to the name[d] insured or any household relative of the name[d] insured. This is a “family exclusion clause” that is intended to prevent a collusive [lawsuit] among family members. In this case the UM coverage was denied because the policy issued to Brixius further stated that an [“uninsured auto”] was not a vehicle defined as an insured auto under the liability portion of the policy.
The bill redefines “uninsured motor vehicle” to include an insured motor vehicle when the liability insurer has denied liability coverage to a nonfamily member whose operation of an insured vehicle results in injuries to the named insured or relatives. Therefore, an insurer would be required to provide UM coverage to a UM insured who is injured as a passenger in their own car driven by a nonfamily member.
Fla. S. Comm, on Com., SB 170H (1992) Staff Analysis 8-9 (June 2,1992).
Even though • section (3)(c) does not address the specific factual scenario presented in the instant case, the Brixius opinion viewed in light of the subsequent statutory amendment does suggest that the exclusion in Smith’s policy is an inappropriate limitation on UM coverage. The underlying purpose of the amendment was “to avoid the inequity of denying benefits to a class I insured who had paid for the liability coverage to protect permissive users and had also paid for UM coverage.” Warren, 678 So.2d at 328. The exclusion at issue in Brixius was essentially identical to 'the one at issue here, and' applying it to the facts of this case will likewise result in the complete denial of coverage to a class I *867 insured who cannot recover either under the liability portion of his own policy or from the un/underinsured nonfamily tort-feasor. Here, the underinsured nonfamily passenger/owner negligently maintained the vehicle and the driver seeks. UM benefits under his own policy. In Brixius, the nonfamily uninsured permissive driver was the tortfeasor' and the passenger/owner sought UM coverage under her own policy, I see no meaningful difference between applying the exclusion to the facts of Brix-ius and the facts presented in this case. In both cases, the class I insureds should not be denied UM benefits for which they have paid premiums; such a result is inequitable and undermines the policy behind UM insurance. Indeed, without the exclusion, the Nissan clearly qualified as an uninsured motor vehicle because Smith had been denied coverage under the Mot-zenbecker policy:
UNINSURED MOTOR VEHICLE-COVERAGES U and U3
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
[[Image here]]
Uninsured Motor Vehicle — means:
1. a land motor vehicle, the ownership, maintenance, or use of which is:
[[Image here]]
b, insured, self-insured’ or bonded for bodily injury liability at 'the time- of the accident; but
[[Image here]]
(3) the insuring company or self-insurer denies coverage [.]
(Last two emphases added.) Accordingly, under the unique circumstances of this case, the trial court was' correct in finding that Smith was entitled to UM coverage.
In arriving at the contrary conclusion, the majority relies on the Florida Supreme Court’s decisions in Travelers Commercial Insurance Co. v. Harrington, 154 So.3d 1106 (Fla.2014); Travelers Insurance Co. v. Warren, 678 So.2d 324 (Fla.1996); and Reid v. State Farm Fire & Causality Co., 352 So.2d 1172 (Fla.1977); as well as this court’s decision in Nationwide Mutual Fire Ins. Co. v. Olah, 662 So.2d 980 (Fla. 2d DCA 1995). While at first blush these cases appear to support the denial of coverage in this case, they are factually distinguishable.
In Harrington, Crystal Harrington was injured in a single-car accident. At the time of the crash, Joey Williams — a non-family member — was driving and Harrington was a passenger. The car, was owned by. Harrington’s father and , insured by Travelers. Williams had a policy with Nationwide. Harrington recovered the liability limit of $50,000 under the Nationwide policy as well as the liability limit of $100,000 under the Travelers policy. Williams was also covered under the liability portion of the Travelers policy. . Because Harrington’s damages exceeded the payments she received under the two policies, she sought UM coverage from Travelers. Travelers denied coverage under a “family vehicle exclusion,” which stated that an uninsured vehicle did not include any vehicle:
Owned by or furnished or available for the regular use of you or a “family member” unless it is a “your covered auto” to which Coverage A of the policy applies and bodily injury liability coverage is excluded for any person other than you or any “family member” for damages sustained in the accident by you or any “family member[,]” -
*868 Harrington, 154 So.3d at 1108-09 (alteration in original); The supreme court determined that this exclusion did not conflict with subsection (3)(c) because the liability portion of the policy did not exclude non-family members and because subsection (3)(c) does not “stack UM coverage on top of liability coverage under a single policy.” Id. at 1113 (quoting Warren, 678 So.2d at 328).
In Warren, Dianna Lynn Warren and her friend Celeste Chancey Bryant were killed in a single-car accident. At the time of the accident, Bryant was driving and Warren was a passenger. The car was owned by Bryant’s father and insured by Travelers. Warren’s estate alleged that her wrongful death was caused by Bryant’s negligent operation of the vehicle and/or negligent maintenance of the car, ultimately settling for the liability limit of $50,000. The estate then claimed entitlement to UM coverage under the same policy. Travelers denied coverage based on a-provision providing that “your car” (the car insured under the policy) was not an uninsured vehicle. The supreme court determined that this exclusion did not conflict with section 627.272, specifically explaining that “section 627.727(3)(c) did not stack UM coverage on top of liability coverage under a single policy.” Warren, 678 So.2d at 328. The supreme court emphasized that to do so would effectively raise the limit' of liability coverage for class II insureds, a result that the court did not believe the legislature intended. Id.
■ The holdings in Harrington and Warren do not apply here for several reasons. In both of these cases, the exclusions at issue were different and significantly narrower than the exclusion at issue here, which purports to exclude any vehicle insured under the liability portion of the policy. See Harrington, 154 So.3d at 1108 (addressing a “family vehicle exclusion”); Warren, 678 So.2d at 326 (addressing provision providing that “your car,” the car insured under the policy, was not an uninsured vehicle). But perhaps more importantly, both Harrington and Warren sought to stack UM coverage in addition to bodily injury coverage under the same policy for the same loss. Stacking is inappropriate because it would effectively raise a policy’s liability limits. Warren, 678 So.2d at 328. Here, however, Smith has not recovered any benefits for his own injuries, so it is clear that he is not seeking to stack UM coverage on top of bodily injury coverage under the same policy for the same loss. I would also note that Warren was a class II insured, whereas Smith is a class I insured. It is particularly problematic for UM coverage to be completely denied to a class I insured because he or she has paid for that coverage. And finally, the concern that the limits of liability coverage would be effectively and inappropriately raised is not implicated here because Smith has not recovered under the liability portion of his policy.
In Reid, Dawn Marie Reid was injured in a car accident while a passenger in her father’s car. Her sister was driving. The vehicle was insured by State Farm. Reid sought coverage under the liability and UM portions, of the State Farm policy. She was denied liability coverage based on a family-household exclusion because the alleged tortfeasor was her sister and they resided in the same household. She was denied UM coverage based on an exclusion providing that an uninsured vehicle could not be the vehicle defined in the policy as the insured vehicle because the vehicle at issue was the family car listed as insured under the policy. It was in this narrow context that the supreme court determined that an insured vehicle “does not become uninsured because liability coverage may not be available to a particular individual.” Reid, 352 So.2d at 1173.
*869 Reid is distinguishable from the instant case because Smith was not driving the vehicle explicitly listed as insured under his policy. Indeed, the court made clear that the facts of the case made it an exception to the general rule “that an insurer may not limit the applicability of uninsured motorist protection.” Id. Additionally, an important factor in the supreme court’s decision in Reid was that Reid’s sister, a family member who lived in the same household, was'driving at the time of the accident. The supreme court stated that to allow recovery under the UM portion of the policy under these circumstances “would completely nullify the family-household exclusion,” a valid type of exclusion intended to prevent collusive lawsuits between family members. Id. at 1178-74.
In Olah, Daniel Lattanzio was driving a vehicle owned by Theodore and Margaret Simon, and the Simons and Aileen Lattan-zio were passengers. Due to Mr. Lattan-zio’s negligent operation of the vehicle, it struck a vehicle occupied by Mr. and Mrs. Born, and all of the occupants of both vehicles were killed. The vehicle that Mr. Lattanzio had been driving was covered under the Simons’ policy with Allstate. Lattanzio also had a policy oh his own vehicles with Nationwide. Olah, 662 So.2d at 981.
After the decedents’ estates made various claims against these two policies, Allstate paid its liability limits of $100,000 to Lynn Olah, on behalf of the Estate of Ms. Lattanzio, and Nationwide tendered its liability limits of $300,000 to the Simon and Born estates. The estate then sought payment under the liability as well as UM portions of the Nationwide policy. The estate’s claim under the liability portion of the Nationwide policy was rejected because Ms. Lattanzio was a member of Mr. Lattanzio’s household. The issue in Olah was whether the estate could recover under the UM portion of the Nationwide policy. Id.
This court held that the estate was not entitled to UM coverage under the Nationwide policy because it provided that an uninsured vehicle does not include “any motor vehicle insured under the liability coverage of this policy,” and the Simon vehicle was covered under the liability portion of the Nationwide policy because Lat-tanzio had been driving it. Id. at 982. The court explained that the exclusion was “clear and unambiguous.” Id. The Olah court noted the Brixius opinion and the later amendment to section 627.727(3), concluding that the amendment was not applicable because “it affects claims invoking nonfamily tortfeasors.” See Olah, 662 So.2d at 982 n. 3.
Olah is distinguishable from the instant case because M's. Lattanzio was killed in an accident caused by her family member’s negligent driving. ' Like in Reid, to allow Ms. Lattanzio to recover UM benefits under this circumstance would effectively nullify the family-household exclusion. In this case, the family-household exclusion found in Smith’s policy is not implicated because Smith and Ackermecht are not family members or members of the same household — a scenario much like that presented in Brixius. Another significant difference between Olah and the instant case is that the estate recovered $100,000 under the Allstate policy whereas Smith has not recovered anything under either his policy or the Motzenbecker policy. This complete denial of coverage makes the facts of this case more akin to those in Brixius as opposed to those in Olah. .
A final point that distinguishes the instant case from Harrington, Warren, Reid, and Olah is that those cases each involved a single negligent party. ■ Herej on the other hand, Ackermecht recovered from the Smith policy claiming that Smith *870 had negligently operated the vehicle,, but Smith sought to recover under the Mot-zenbecker policy as well as the UM portion of his policy claiming that Ackermeeht had negligently maintained the vehicle. He was unable to recover anything under this theory. The fact that Ackermeeht and Smith sought recovery under two completely separate and distinct theories of negligence is an additional reason that allowing Smith to recover UM benefits under the facts of this case would not constitute improper stacking.
In my view, the facts presented in State Farm Mutual Automobile Insurance Co. v. Workman, 421 So.2d 660 (Fla. 3d DCA 1982), are more like those of the instant case than any of the other cases addressed thus far.[11] In Workman, Naomi Workman was killed while driving a car owned by Kenneth Willis, a non-family member who was riding as a passenger at the time of the accident. Workman’s estate recovered liability coverage under Willis’s insurance policy with Allstate, but the limits of that policy were less than Workman’s own UM coverage with State Farm. Workman’s estate sought UM coverage under the State Farm policy, claiming that Willis was negligent. State Farm denied coverage'based on a policy provision essentially identical to the’ one at issue in this case which excluded ÜM' coverage for vehicles insured under the liability portion of the policy. Despite the fact that Workman had been afforded liability coverage for her liability while operating a nonowned vehicle, the Third District determined that UM benefits must be available to Workman’s estate. The court reasoned “that the focus'of our inquiry should be whether the injury for which a claim is made is covered by liability insurance, rather than a general inquiry into whether some kind of insurance covered, for some purposes, the automobile involved, in the accident.” Id. at 660. The court noted that Reid was “distinguishable in that it involved a family-household exclusion, not applicable here.” Workman, 421 So.2d at 661 n. 1.
I agree with the Workman court’s analysis, and I believe that it should be applied to the instant case. Both cases involve a permissive driver’s claim for UM coverage under his or her own insurance policy where a non-family member passenger’s negligence allegedly contributed to an accident. Despite a provision in Workman’s policy excluding UM coverage for a vehicle insured under the liability portion of the policy, the Workman court held that UM coverage was appropriate. I would hold that coverage is similarly appropriate' in this case. Indeed, Workman had already recovered under Willis’s policy whereas Smith could not recover under the Motzen-becker policy at all — so the equities weigh even more heavily in favor of coverage under the facts- presented here.
Accordingly, I conclude that applying the exclusion in Smith’s policy under the facts of this case is contrary to the purpose of UM insurance and Smith should be entitled to UM coverage. I respectfully request that the legislature clarify section 627.727 to address factual scenarios like this one so that this inequity will not be repeated.

. Though there are several cases that address exclusions like the one at issue here, the parties have not cited and I have not been able to locate a single Florida case applying such an exclusion where a permissive driver who was injured in an accident sought UM benefits under his own policy after being unable to recover either under the liability portion of his own policy or under the policy of his nonfamily passenger, whose family owned the vehicle. This case is also unique in that the driver is not the only party allegedly at fault in the accident — the passenger was found by a jury to be ninety-two percent at fault based on a negligent maintenance theory.

. The difference between class I and class II insureds is that
class I insureds are named insureds and resident relatives of named insureds, Conversely, class II insureds are lawful occupants of the insured vehicle who are not named insureds or resident relatives of named insureds. Class II insureds do not pay for UM coverage under the named insureds' policy. Rather, class II insureds are essentially third party beneficiaries to the named insureds’ policy.
Travelers Ins. Co. v. Warren, 678 So.2d 324, 326 n. 2 (Fla.1996).

. Interestingly, the Harrington, Warrm, and Olah decisions failed to mention Workman.