# Supreme Court of Florida

_____

No. SC13-2013
_____

**ALLISON CHASE, etc.**
Petitioner,

vs.

**HORACE MANN INSURANCE COMPANY,**
Respondent.

[February 19, 2015]

QUINCE, J.

Allison Chase seeks review of the decision of the First District Court of Appeal in Horace Mann Insurance Co. v. Chase, 121 So. 3d 1191 (Fla. 1st DCA 2013), on the ground that it expressly and directly conflicts with the Second District's decision in Creighton v. State Farm Mutual Auto Insurance Co., 696 So. 2d 1305 (Fla. 2d DCA 1997), on the issue of whether removing the sole named insured from an auto insurance policy, and listing a separate individual as the named insured on that policy for the first time, creates a new policy for purposes of section 627.727, Florida Statutes (2008). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

For the reasons stated below, we quash the decision of the First District, approve the decision of the Second District in <u>Creighton</u>, and find that when Allison Chase became the named insured on her auto insurance policy, Horace Mann was required to advise her of her right to uninsured motorist (UM) benefits equal to her liability limits and to obtain a written waiver of those benefits before reducing them under section 627.727, Florida Statutes (2008).

## STATEMENT OF THE CASE & FACTS

The pertinent facts of this case are not in dispute:

> In 2001, Richard Chase obtained policy number 09-65434800 from Defendant Horace Mann. The insured vehicle was a 1992 Chevrolet Geo and the policy provided bodily injury liability limits of $100,000/$300,000. Richard Chase, who was the only named insured and the titled owner of the insured vehicle, signed a form in which he selected reduced uninsured motorist limits of $25,000/$50,000. His daughter, Allison Chase, was listed as a "driver" but was not a named insured on the policy and thus had no right to select reduced uninsured motorist limits.
>
> Policy number 09-65434800 remained in effect with Richard Chase as the sole named insured until January 27, 2004. At that time, Horace Mann removed Richard Chase as the sole named insured on the policy, made Allison Chase the sole named insured, and changed the insured vehicle to a 1997 Ford Escort ST that had been acquired by Allison three days earlier on January 24, 2004 and was titled in only her name. At the same time, Horace Mann issued a new policy, Policy Number 09-69095420, with Richard Chase as the sole named insured, insuring a 2004 Jeep that was owned by Richard.
>
> Horace Mann's issuance of a new policy to a person (Richard Chase) who was already the named insured on an existing policy, while revising the existing policy to completely change the named insured, as well as the insured vehicle, meant that Richard Chase, who

- 2 -

had already selected lower uninsured motorist limits for the policy, was presented with another written rejection form while Allison Chase, who had never previously had the opportunity or right to select lower UM limits, was not provided the opportunity to reject the coverage or select lower limits. Horace Mann's corporate representative, Theresa Beshears, testified that Horace Mann could have continued Richard Chase's existing policy and issued a new policy to Allison Chase. Ms. Beshears testified that if a new policy had been issued to Allison Chase, Ms. Chase would have had to sign a rejection form in order to select lower limits.

In August of 2005, approximately 18 months after Horace Mann issued the policy to Allison Chase, Allison moved out of her father's house and Richard Chase was removed as a listed driver on the policy. On February 10, 2007, the insured vehicle was changed from the 1997 Ford Escort to a 2004 Jeep Wrangler. On June 15, 2007, Allison Chase moved back in with her father and added Richard L. Chase as a listed driver on her policy, number 09-65434800. The crash that killed Richard Chase and injured Allison Chase occurred exactly one month later on July 15, 2007. At no time did Allison Chase reject uninsured/underinsured motorist coverage in writing or select lower limits.

Order on Cross Motions for Partial Summary Judgment Concerning Entitlement to, and Amount of, UM Insurance Coverage, Entitlement to Attorney's Fees and Costs, and Lifting Discovery Stay at 2-3, Chase v. Horace Mann Ins. Co., No. 16-2008-CA-006534-XXXX-MA (Fla. 4th Cir. Ct. Sept. 28, 2010). Allison Chase asserted that she, individually and as personal representative of her father's estate, was entitled to UM coverage in the amount equal to the policy's bodily injury limits because she never selected lower UM coverage in writing as required by section 627.727, Florida Statutes (2008). Id.

<u>Trial Court Order</u>

- 3 -

On September 28, 2010, the trial court issued its order. Id. at 4. In the order, the trial court recalled that at the hearing on the motions for summary judgment, "Horace Mann relied principally on State Farm [Mutual] Auto[mobile] Insurance Co. v. Shaw, 967 So. 2d 1011 (Fla. 1st DCA 2007), and [Allison Chase] relied principally on Creighton v. State Farm Automobile Insurance Co., 696 So. 2d 1305 (Fla. 2d DCA 1997)." Id. Relying on its recitation of the "undisputed material facts," the trial court determined that Shaw was not dispositive and "[did] not establish Horace Mann's motion for summary judgment." Id. After determining that Creighton "controls the insurance coverage question[,]" the trial court granted Allison Chase's Motion for Partial Summary Judgment on Entitlement to, and Amount of, UM coverage. Id. Among other relief, the court ruled that both Allison Chase and her deceased father's estate were entitled to $100,000 of insurance coverage under Allison Chase's policy. Id.

<u>First District's Decision</u>

On appeal to the First District Court of Appeal, Horace Mann argued that Richard Chase's waiver was binding on Richard Chase's estate, as well as Allison Chase, both individually and as personal representative of Richard Chase's estate. Horace Mann Ins., 121 So. 3d at 1192.

The district court determined that "[b]ecause no policy limits were changed, the policy was renewed, extended, changed, superseded, or replaced, and [Richard]

- 4 -

Chase's waiver of higher UM coverage bound [Allison] Chase individually and as personal representative of [Richard] Chase's estate." Id. at 1194 (citing Shaw, 967 So. 2d at 1015; Atlanta Cas. Co. v. Evans, 668 So. 2d 287, 289 (Fla. 1st DCA 1996)). Relying on its previous decision in Travelers Commercial Insurance Co. v. Harrington, 86 So. 3d 1274, 1277 (Fla. 1st DCA 2012) (holding that under §627.727(9), unlike subsection (1), the waiver must be personally made by the insured who claims UM benefits), quashed, 39 Fla. L. Weekly S647 (Fla. Oct. 23, 2014), the district court also determined that the UM stacking waiver applied to Richard Chase individually and to Allison Chase as personal representative of Richard Chase's estate, but not to Allison Chase individually because she did not sign the UM stacking waiver as an insured. Id. Thus, the district court reversed all of the trial court findings, except that it affirmed the trial court's finding that Allison Chase, individually, was entitled to stacked coverage. Id.

## ANALYSIS

The issue in this case stems from a trial court's order granting partial summary judgment to the insured, Allison Chase, individually and as personal representative of her deceased father's estate, and denying the insurer, Horace Mann's motion for summary judgment following Chase's claim for UM benefits resulting from an auto accident. The relevant facts in this case are undisputed.

Therefore, this Court reviews the legal issues presented de novo. Kirton v. Fields, 997 So. 2d 349, 352 (Fla. 2008).

The primary issue and point of conflict in this case is whether the Horace Mann policy became a new policy when Allison Chase became the sole named insured on the policy. Although Horace Mann responds to Allison Chase's statement of the issue, arguing that the changing of the named insured constitutes a change to the existing policy, which does not automatically require Horace Mann to allow Allison Chase the right to make certain waivers, it states a derivative conflict issue to be resolved by this Court. The derivative issue is whether Richard Chase, Allison Chase individually, and Allison Chase as personal representative of Richard Chase's estate are bound by Richard Chase's UM waivers under the insurance policy that Allison Chase was the named insured on at the time of the accident. We address each issue in turn below.

### New Policy

The policy in question is a new policy for purposes of section 627.727(9), Florida Statutes (2008), because the only named insured on the policy has not previously been a named insured on the policy, and therefore has not had the opportunity to make any of the express waivers required by law.

Generally, UM benefits under an automobile insurance policy are equal to the policy's liability limits. § 627.727(1), Fla. Stat. (2008). Section 627.727(1)

- 6 -

dictates that UM coverage can only be reduced to an amount lower than the bodily injury liability coverage where a <u>named insured</u> rejects the higher coverage in writing <u>on behalf of all insureds under the policy</u>. <u>Id</u>. Regarding an insurance company's duty to offer higher UM coverage after lower UM coverage has been requested in writing, the statute dictates:

> When <u>an insured . . . has initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits</u>, higher limits of uninsured motorist coverage <u>need not be provided</u> in or supplemental to any other policy which <u>renews</u>, <u>extends</u>, <u>changes</u>, <u>supersedes</u>, or <u>replaces</u> an existing policy with <u>the same bodily injury liability limits</u> unless an insured requests higher uninsured motorist coverage in writing. The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected.

<u>Id.</u> (emphasis added).

In <u>American Fire & Indemnity Co. v. Spaulding</u>, 442 So. 2d 206 (Fla. 1983), Ruth Spaulding's son, Joseph Spaulding, was injured on December 1, 1978, while he was a passenger in a vehicle operated by Bradford Suder. <u>Id.</u> at 207. The Suder vehicle collided with a vehicle operated by Robert V. Troyan (Troyan) and insured by Kenilworth Insurance Company (Kenilworth). <u>Id.</u> The Suder vehicle was owned by Bradford's father, Burton Suder, and insured by American Fire & Indemnity Company (AFIC). <u>Id.</u> Spaulding was insured by Fidelity & Casualty Company of New York (F & C). <u>Id.</u>

- 7 -

The Suder's AFIC policy provided bodily injury liability coverage of $250,000 per person and $500,000 per occurrence, with UM coverage of $15,000 per person and $30,000 per occurrence. Id. Following AFIC's failure to timely approve a proposed settlement, Spaulding commenced an action for damages against Troyan and Kenilworth, an action against AFIC and F & C for UM benefits, and an action against AFIC for attorney's fees. Id. After AFIC counterclaimed for declaratory relief, "[t]he parties proceeded to nonjury trial on the issue of whether AFIC's uninsured motorist coverage was $15,000 or $250,000." Id. The evidence before the trial court established that Suder had authorized his insurance agent to increase his bodily injury coverage to $250,000 per person, but elected to maintain his UM benefits at $15,000 per person; no written rejection was obtained. Id. at 207-08. Suder subsequently added his son Bradford to his policy, and added another vehicle, without being notified of his option to increase his UM coverage. Id. at 208. "Suder testified, however, that he intended for his [UM benefits] to remain at the lower limits because of the additional expense of increased coverage." Id.

The trial court determined that Suder's correct amount of UM coverage was $15,000 per person. Id. The Fourth District reversed this finding on appeal and held that the correct amount of Suder's UM coverage was $250,000 per person. Id. The district court construed section 627.727(1), Florida Statutes (1977), "as

requiring that the insurer inform the insured, Burton Suder, of his statutory right to higher uninsured motorist coverage with every 'material' policy endorsement." Id. (footnote omitted). Although the district court was compelled to apply its analysis of the law in effect when the cause of action arose, the court highlighted the 1982 amendment made to section 627.727, which eliminated "any possibility that this section will again be interpreted as requiring an offer of uninsured motorist coverage with every 'material' policy change." Id. at 208 n.4 (citing § 627.727(1) (Supp. 1982)).

This Court reviewed the Fourth District's decision in Spaulding, based on a conflict with Kimbrell v. Great American Insurance Co., 420 So. 2d 1086 (Fla. 1982). Id. at 207. This Court disagreed with the district court's interpretation of the statute, reasoning that the statute requires that a selection of lower UM coverage be made knowingly but "does not mandate that this selection be in writing or any other specific form." Id. at 208. This Court continued, "[i]t is conceivable that the insured might know of the availability of coverage without being expressly informed of such by the insurer." Id. at 209. This Court determined that Suder was clearly "aware of his statutory right to higher uninsured motorist coverage and knowingly elected to continue his selection of the lower amount . . . [t]he decision of Burton Suder, the named insured, to maintain his [UM] coverage at $15,000 is binding on any additional insureds." Id. (citing

- 9 -

Whitten v. Progressive Cas. Ins. Co., 410 So. 2d 501, 504 (Fla. 1982)) (emphasis added). This Court, therefore, quashed the district court's decision. Id.

In the instant case, at the hearing on the motions for summary judgment, Horace Mann relied principally on Shaw, 967 So. 2d 1011, and Plaintiff relied principally on Creighton, 696 So. 2d 1305. In Shaw, the First District reversed a trial court's order "declaring that each of the appellee estates of Sean Ditmore and Stephanie Ditmore are entitled to [UM] policy limits of $100,000." 967 So. 2d at 1012. The court "[held] that Sean Ditmore replaced his automobile policy with the same bodily injury liability limits after his former wife elected lower limits of $50,000 per person." Id. (emphasis added).

Sean Ditmore and his first wife, Lori Ditmore, were insured with State Farm from 1996 until their divorce in 2000. Id. Their policy included liability coverage of $100,000 per person and $300,000 per accident. Id. In June of 1996, Lori elected lower UM coverage of $50,000 per person and $100,000 per accident. Id. Lori and Sean divorced in 2000. Id. Following the divorce, State Farm issued Sean another policy with a new number and a new premium, exclusively in Sean's name. Id. at 1012-13. The policy covered a new vehicle located at a new address and had identical liability and UM benefits as the previous policy, but added comprehensive collision coverage for car rental and travel expenses. Id. "In 2003,

- 10 -

Sean substituted a new car . . . but kept the same liability policy limits and UM coverage." Id. at 1013.

On April 22, 2004, Sean married his second wife, Stephanie. Id. The next day, while traveling in Stephanie's truck, Sean and Stephanie were tragically killed when an underinsured motorist struck their car head on. Id. Stephanie's truck was not insured by State Farm and did not have UM coverage. Id. The tortfeasor's insurance policy limits were not enough to cover the loss and the estates filed a claim for UM benefits under Sean's State Farm policy. Id. State Farm denied the claim based on language in Sean's UM coverage excluding benefits for bodily injury occurring in a vehicle owned by the insured or the insured's spouse that is not covered under the policy. Id.

Following extensive litigation, the estates moved for amended summary judgment, claiming that the UM exclusion that Lori signed was not binding on Sean and Stephanie. Id. The trial court agreed "that State Farm failed to obtain a valid UM exclusion under section 627.727(9)(d)." Id. The trial court also determined that "Lori's election of lower limits, although binding on all insureds at that time . . . was not binding on Sean or Stephanie because a new policy was issued solely to Sean, after his divorce from Lori in 2000, on a new vehicle, at a new address, and with new coverages." Id. at 1013-14. The trial court continued, "[t]his policy represented a newly issued policy, or at the very least amounted to

- 11 -

such a material change to the policy as to require State Farm to obtain a new UM coverage rejection form signed by the actual insured, Sean Ditmore." Id. at 1014. "State Farm appealed the trial court's ruling that Lori's election of the lower UM benefits of $50,000 was not effective." Id.

On appeal, the First District "agree[d] with State Farm that Lori's election of reduced UM coverage remained in effect because the policy was replaced with the same bodily injury liability limits, pursuant to section 627.727(1), Florida Statutes (2004)." Id. Relying on Evans, the district court determined that "Sean's divorce from Lori did not require a new UM coverage offer by State Farm." Id. at 1015. After briefly revisiting this Court's decision in Spaulding, which indicates that UM coverage does not have to be offered with every " 'material' policy change[,]" the First District stated "[c]hanges to policies, or their replacement, that do not affect bodily injury liability limits do not require a new UM election." Id. (emphasis added). The First District also rejected the estates' arguments that "the cumulative effect of the various changes to the policy . . . causes it to be a 'new' policy instead of a replacement policy." Id. The district court determined that the "cumulative effect" argument was not supported by any statutory language, or any cases construing section 627.727(1). Id. at 1015-16. The district court reversed the trial court's ruling on the amount of UM benefits available to the estates, holding that because Sean Ditmore "replaced" his automobile policy with the same liability

limits after his former wife elected lower UM limits, the estates were entitled to the lower benefits.  Id. at 1016.

In Creighton, Peter Creighton was employed by an accounting firm by the name of McNamara & Associates, P.A. (McNamara) in 1987.  696 So. 2d at 1305. In that same year, McNamara applied to State Farm for an automobile insurance policy to cover a 1987 Honda Accord.  Id.  The application listed Peter Creighton as the driver, with bodily injury limits of $100,000 per person and $300,000 per accident.  Id.  However, an authorized officer of McNamara signed a waiver reducing the UM benefits to $10,000 per person and $20,000 per accident.  Four years later, Peter Creighton leased a 1991 Infiniti in his own name and contacted State Farm for an insurance policy.  Id.  McNamara requested that State Farm apply any policy credits on its policy to Peter Creighton.  Id.

> Rather than transfer the premium credits and membership fees to a new policy for Peter Creighton as the insured, State Farm made the following changes to the existing McNamara policy:
>
> a — changed the owner of the policy from McNamara to Peter Creighton;
> b — changed the billing address from McNamara's business address to Peter Creighton's home address; and
> c — changed the insured vehicle from a 1987 Honda Accord to a 1991 Infiniti.

Id. at 1305 (emphasis added).

On August 7, 1994, Peter Creighton and his pregnant wife, Carol Creighton, were in an automobile accident with an uninsured motorist.  Id. at 1306.  As a

result of the accident, the Creighton's daughter, Madeline, was born prematurely and died the next day. Id. The Creightons made a demand on State Farm for UM benefits in the amount of $100,000 per individual and $300,000 per accident, equaling the bodily injury limits of the policy. Id. State Farm rejected the demand and the Creightons commenced an action for declaratory relief. Both parties filed motions for summary judgment. Id. The trial court granted State Farm's motion, effectively limiting the UM benefits to $10,000/$20,000. Id. The trial court did not state the basis for its ruling. Id.

The Second District reversed that decision, finding that "[f]or internal bookkeeping purposes, State Farm changed the existing McNamara policy instead of issuing a new policy. Notwithstanding the mechanics State Farm employed, this is a new policy as to Peter Creighton, just as if the McNamara policy had been canceled and a new policy issued in Peter Creighton's name." Id. (emphasis added). The district court concluded, "Neither Peter Creighton nor his wife ever signed a waiver form advising them of any of the information the [L]egislature deemed important." Id. (footnote omitted). Thereafter, the district court reversed and remanded in the Creightons' favor. Id.

In Atlanta Casualty Co., Shirley T. Evans (formerly Brinson) and her husband, Larry Brinson, applied for auto insurance with Atlanta Casualty Company on February 19, 1990, requesting bodily injury liability limits of $10,000

per person and $20,000 per accident, and a property damage liability limit of $10,000 per accident. 668 So. 2d at 288. Mr. Brinson signed a form rejecting UM coverage. Id. The issued policy covered a period from February 20, 1990, to February 20, 1991. Id. Evans and her former husband divorced on December 30, 1990. Id. Prior to the expiration of the policy, the insurance company sent a renewal notice to the address listed on the application, which appeared to be where Evans continued to reside after the divorce. Id. On February 20, 1991, Evans renewed the same policy number and submitted a signed request for the same coverage, but requested that her former husband be removed as the named insured and that her name be changed from Brinson to Evans. Id. The insurance company made the requested changes. Id. The insurance company did not offer Evans UM coverage, nor did it obtain a written rejection of such coverage prior to renewing the policy. Id. On July 7, 1991, an uninsured motorist injured Evans and her minor children in an auto accident. Id.

Based on section 627.727(1), Florida Statutes (1991), the First District determined that

> an insurer is not required to provide uninsured motorist coverage when 'an insured named in the policy' rejects such coverage, in writing, 'on behalf of all insureds under the policy.' Moreover, uninsured motorist coverage need not be provided when 'an existing policy' as to which uninsured motorist coverage had been rejected is 'renew[ed], extend[ed], change[d], supersede[d], or replace[d]' by 'any other policy' having 'the same bodily injury liability limits' as

- 15 -

the previous policy, '[u]nless an insured . . . requests such coverage . . . in writing.'

Id. at 289 (alterations in original). The court cited dicta in Spaulding as support for its conclusion that a mere "intervening change in the policy, 'material' or otherwise," does not require an insurance company to offer an insured UM coverage again after such coverage was previously rejected. Id. at 290. The court concluded that the plain language of the statute did not require the insurance company to offer UM coverage to Evans absent a written request for such coverage. Id.

## This Case

Although Allison's policy retained the same liability limits as her father's previous policy, similar to Sean Ditmore's policy with State Farm in Shaw, indicating that the insurance company had no duty to offer UM benefits that were equal to the policy's bodily injury liability limits, there is a critical distinction between these cases: it appears that Sean Ditmore had been a named insured on the State Farm policy shared with his first wife. See Shaw, 967 So. 2d at 1012-13 (the district court repeatedly refers to the policy as belonging to both Sean and Lori; there is no indication that only Sean was listed as a driver on the policy; and the district court states "[a]fter the divorce, State Farm issued another insurance policy exclusively in Sean's name." This statement implies that he and his first wife, Lori, were both listed as named insureds on the first policy.) (emphasis added).

This is significant because Sean Ditmore had the opportunity to waive the higher bodily injury liability limits at all times that he was listed on the policy, indicating that when he divorced from his first wife and subsequently added his second wife to the policy, the policy with Stephanie replaced the policy with Lori, as the First District found. On the other hand, Allison Chase was given no such opportunity. Allison was not a named insured on her father's policy prior to Horace Mann's unilateral decision to give her the policy number that previously belonged to her father, where she previously had no authority to make any coverage waivers.

Horace Mann would like for this Court to focus on the portion of section 627.727(1), Florida Statutes (2008), that allows a named insured to elect "lower limits on behalf of all insureds." However, we find that the dispositive language concerning this issue is the requirement that "a named insured" be given the opportunity to waive those coverages. This Court has made clear that Florida's UM statute "is not designed for the benefit of insurance companies." State Farm Mutual Auto. Ins. Co. v. Curran, 135 So. 3d 1071, 1077 (Fla. 2014); see also id. at 1081 (Lewis, J., concurring) ("[W]e have repeatedly recognized that 'as a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection.' ") (citing Salas v. Liberty Mut. Fire Ins. Co., 272 So. 2d 1, 5 (Fla. 1972))). Just as in Creighton, Allison Chase being listed

- 17 -

as the named insured on the Horace Mann insurance policy created a new policy for the purposes of section 627.727(1), Florida Statutes (2008), because it was the first time that the only named insured on the policy had the opportunity to make statutorily required waivers. Therefore, Horace Mann did not obtain a valid waiver of UM coverage under Allison Chase's policy.

Richard Chase's Waivers

At the time of the accident, Allison Chase was the name insured on the Horace Mann policy, with her father listed as a driver. There is no dispute that Allison Chase, as the sole named insured on the policy, never signed a waiver of higher UM coverage. Therefore, Richard Chase's waivers made under his policy, albeit the same policy number, do not apply to her as the sole named insured on her policy or as the personal representative of her father's estate under her policy.

## CONCLUSION

For the above stated reasons, we quash the decision of the First District, approve the decision of the Second District in Creighton, and find that Allison Chase is not subject to Richard Chase's waiver of benefits and, therefore, Horace Mann did not obtain a valid waiver of benefits from Allison Chase as the named insured of her Horace Mann auto insurance policy.

It is so ordered.

LABARGA, C.J., and PARIENTE, and PERRY, JJ., concur.
LEWIS, J., concurs in result.

POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I would discharge for lack of jurisdiction. This Court has explained that, in order for us to have jurisdiction under article V, section 3(b)(3) of the Florida Constitution, the "[c]onflict between decisions must be express and direct, i.e., it must appear within the four corners of the majority decision." Reaves v. State, 485 So. 2d 829, 830 (Fla. 1986). Here, the majority describes and quotes the factual circumstances of this case as detailed in the trial court's order on cross motions for partial summary judgment. However, most of those specific details are not included within the four corners of the First District's decision in this case. Because there are insufficient facts in the First District's decision regarding the vehicle or vehicles involved and the contents of the relevant policies, I cannot determine whether the factual circumstances in this case are similar to the factual circumstances of Creighton v. State Farm Mut. Auto. Ins. Co., 696 So. 2d 1305 (Fla. 2d DCA 1997). Accordingly, express and direct conflict does not appear within the four corners of the First District's decision, and I respectfully dissent.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

First District - Case No. 1D12-2132

(Duval County)

William A. Bald, Benjamin Edward Richard, and Stephen John Pajcic of Pajcic & Pajcic, P.A., Jacksonville, Florida,

    for Petitioner

Julius F. Parker, III and Kathy J. Maus of Butler Pappas Weihmuller Katz Craig LLP, Tallahassee, Florida,

    for Respondent